```
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

CHRISTY WOOD,

                Plaintiff,           1:16-cv-00570-MAT
        -v-                          DECISION AND ORDER

NANCY A. BERRYHILL,
Acting Commissioner OF Social Security,

                Defendant.
_____
```

## INTRODUCTION

Christy Wood ("Plaintiff"), represented by counsel, brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("Defendant" or "the Commissioner") denying her application for supplemental security income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. § 1383(c). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Commissioner's decision is reversed, Plaintiff's motion is granted to the extent that the matter is remanded solely for calculation and payment of benefits. Accordingly, Defendant's motion is denied.

## PROCEDURAL BACKGROUND

On January 7, 2013, Plaintiff protectively filed for SSI, alleging disability beginning January 7, 2013. Administrative Transcript ("T.") 67. The claim was initially denied on May 17,

2013, and Plaintiff timely requested a hearing. T. 80-84. A hearing was conducted on January 13, 2015, in Buffalo, New York by administrative law judge ("ALJ") Robert T. Harvey. T. 28-55. Plaintiff appeared with her attorney and testified. An impartial vocational expert ("VE") also testified.

The ALJ issued an unfavorable decision on January 29, 2015. T. 8-23. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. T. 64-65. On November 17, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. T. 1-6. Plaintiff then timely commenced this action.

### THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 416.920(a). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. T.13.

At step two, the ALJ determined that Plaintiff had the "severe" impairments of lumbar spondylosis and spondylolisthesis, depression, anxiety and panic disorder. T. 13. The ALJ also determined that Plaintiff's medically determinable impairments of cervical cancer and Hepatitis type C did not cause significant work-related functional limitations and thus were nonsevere. *Id*.

2

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically considered Listings 1.03, 1.04A, 12.04, and 12.06 in making this determination. T. 14.

Before proceeding to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 416.967(b), with the following limitations: cannot work in areas with unprotected heights; cannot work around heavy, moving, or dangerous machinery; occasional limitation in bending, climbing, stooping, squatting, kneeling, balancing and crawling, and pushing and/or pulling with the upper extremities; no climbing ropes, ladders, or scaffolds; occasional limitation in the ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, respond appropriately to changes in the work setting, and make decisions; and cannot work in areas with exposure to cold. T. 16.

At step four, the ALJ determined that Plaintiff had no past relevant work. T. 22. At step five, the ALJ relied on the VE's testimony to find that, taking into account Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including the representative occupations of housekeeper,

3

produce sorter, and checker. T. 22-23. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. T. 23.

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

DISCUSSION

Plaintiff contends that remand for calculation and payment of benefits is warranted because the ALJ: (1) failed to give proper weight to the disability-supporting opinion of Plaintiff's treating neurosurgeon, Dr. Gregory J. Bennett; and (2) improperly gave more weight to the consultative opinion of Dr. John Schwab.

For the reasons discussed below, the Court agrees with Plaintiff that, under the applicable regulations, the ALJ was required to afford controlling weight to Dr. Bennett's opinion. Moreover, because Dr. Bennett's opinion established that Plaintiff suffers from disabling limitations, remand of this matter solely for calculation and payment of benefits is warranted.

**I. The Relevant Medical Opinions of Record**

**A. Opinion of Treating Neurosurgeon Dr. Bennett**

Dr. Bennett, Plaintiff's treating neurosurgeon, completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) on December 19, 2014. T. 347-53. In the statement, Dr. Bennett opined Plaintiff was capable of lifting and/or carrying up to ten pounds occasionally, and never lifting and/or carrying more than ten pounds. T. 347. He opined Plaintiff was able to sit and stand for up to two hours during an eight hour work day, and walk for up to one hour during an eight hour work day. T. 348. He further opined Plaintiff could ambulate up to fifty feet without the use of a cane. *Id.* Dr. Bennett's opinion indicates Plaintiff

could frequently use both her left and right hand to reach, handle, finger, feel, push and pull. T. 349. He also opined Plaintiff could occasionally operate foot controls with her feet. T. 350.

Dr. Bennett stated that Plaintiff was incapable of even "low stress" jobs, that her impairments would likely produce "good days" and "bad days" and she would need to take unscheduled breaks every two hours during an eight hour working day. *Id.* He opined Plaintiff was never able to climb stairs and ramps, climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl. T. 351. He further opined Plaintiff should never work around unprotected heights, moving mechanical parts, or operate a motor vehicle. *Id*. He also opined Plaintiff could occasionally work in an environment with humidity and wetness, dust, odors, fumes, pulmonary irritants, extreme cold or heat, vibrations, and moderate (office) noise. *Id*. Finally, Dr. Bennett opined Plaintiff was able to perform activities of daily living, such as shopping, using public transportation, prepare simple meals, and care for her personal hygiene. T. 352. However, Dr. Bennett opined Plaintiff was unable to travel without a companion for assistance. *Id*.

**B.   Opinion of Treating Physician's Assistant Sister Nancy Murphy PA-C**

Physician's Assistant ("PA") Sister Nancy Murphy completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) on December 18, 2014. T. 287-93. In the statement, PA

6

Murphy opined Plaintiff was capable of lifting and/or carrying up to ten pounds occasionally, and never lifting and/or carrying more than ten pounds. T. 287. She opined Plaintiff would need to change positions frequently during an eight hour work day and was not capable of working full-time. T. 288. PA Murphy indicated Plaintiff could frequently use both her left and right hand to reach, handle, finger, feel, push and pull. T. 289. She also opined Plaintiff had no limitation for operating foot controls. T. 290.

PA Murphy opined Plaintiff was able to tolerate moderate stress in her workplace and may need to take three-to-four unscheduled breaks for fifteen minutes at a time during an eight hour work day. *Id*. She stated Plaintiff was never able to climb stairs and ramps, climb ladders or scaffolds, kneel, crouch, or crawl, but could stoop occasionally. T. 291. She further opined Plaintiff should never work around unprotected heights, humidity and wetness, dust, odors, fumes, or pulmonary irritants; however, Plaintiff could occasionally work around moving mechanical parts, vibrations, and moderate (office) noise, and operate a motor vehicle. *Id*. Finally, PA Murphy opined Plaintiff was able to perform some activities of daily living, such as prepare simple meals, care for her personal hygiene, and slowly climb a few steps with use of a single hand rail, but was unable to perform activities such as shopping, or walk a block at a reasonable pace on rough or uneven surfaces. T. 292.

### C. Opinion of Consultative Examiner Dr. Schwab

On April 4, 2013, Plaintiff underwent an internal medicine examination by consultative examiner, Dr. Schwab. T. 219-22. On examination, Dr. Schwab noted Plaintiff appeared in no acute distress, had a normal gait, and was able to walk on her heels and toes without difficulty. T. 220. He also noted Plaintiff stopped her squat two-thirds of the way down due to perceived leg pain. *Id*. Plaintiff's cervical spine and lumbar spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. T. 221. Plaintiff had full range of motion of both her upper and lower extremities, there was no evidence of subluxations, contractures, ankylosis, or thickening. *Id*. Dr. Schwab diagnosed Plaintiff with Hepatitis C, treated; petit mal seizures; history of cancer of the cervix, stage one; and tobacco abuse. *Id*.

In his source statement, Dr. Schwab opined Plaintiff should avoid heights or any other activity that would be dangerous due to her history of seizures. Otherwise, there were no restrictions based on his examination. T. 222.

## II. Evaluation of Dr. Bennett's Opinion

Under the Commissioner's regulations in place at the time the ALJ issued his decision, a treating physician's opinion is generally entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

8

substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may give less than controlling weight to a treating physician's opinion if it does not meet this standard, but must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

When determining how much weight to afford a treating physician's opinion, the ALJ is required to consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues". *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted). However, the ALJ need not expressly discuss each of these factors, so long as his "reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran*, 362 F.3d at 31–32).

In his decision, the ALJ accorded little weight to Dr. Bennett's opinion because it was not supported by the April 2, 2013 assessment provided by consultative examiner, Dr. Schwab. T. 20. To the extent PA Murphy's opinion was strikingly similar to

9

and supportive of Dr. Bennett's opinion, the ALJ found it was of little weight because it was also inconsistent with Dr. Schwab's assessment. T. 19.

The ALJ further found that Dr. Bennett's treatment records and/or imaging reports showed "mild findings at best" on November 14, 2014; September 2, 2014; August 15, 2014; April 15, 2014; and March 25, 2014. T. 20, *referring* to T. 357-70. Specifically, the ALJ noted that in November 2014, Dr. Bennett reported Plaintiff had no tenderness of the upper and lower extremities, normal range of motion, and negative straight leg raising testing. T. 21, *referring to* T. 359-60. The ALJ also concluded that the evidence as a whole established that Plaintiff required only conservative care for her back pathology and other impairments. T. 21.

The Court finds the ALJ's reasons for discounting the opinion of treating neurosurgeon Dr. Bennett are unsupported by the record. First, the ALJ relied heavily on the opinion of Dr. Schwab, which was based on a one-time consultative examination of Plaintiff, twenty months before Dr. Bennett's opinion. While it is not necessarily improper for an ALJ to credit the opinion of a consultative examiner over the opinion of a treating physician, the ALJ's decision to do so in this case was inconsistent with the record and not supported by substantial evidence.

10

When evaluating competing medical opinions, the reports of one-time consultative examinations are "generally given less weight because they lack the unique perspective to the medical evidence that a treating physician's opinion would provide." *Goldthrite v. Astrue*, 535 F. Supp. 2d 329, 337 (W.D.N.Y. 2008) (internal citations omitted). Here, Dr. Bennett, a practicing neurosurgeon, had been treating Plaintiff for her progressive back pain for at least eight months before completing his medical source statement. T. 347-70. His treatment notes consistently referenced the severity of Plaintiff's low back pain from seven out of ten, to ten out of ten (*see* T. 354, 358, 363, 368), and Plaintiff's diminished range of motion in her spine (*see* T. 355, 359, 369). Moreover, his opinion was consistent with the medical evidence of record, including MRIs of Plaintiff's lumbar spine showing facet hypertrophy and a spondylolisthesis at L4-5, leading to left sided foraminal stenosis. T. 255. In addition, Dr. Schwab's examination of Plaintiff in April 2013 was before her back pain worsened to the point that she was required to undergo epidural injections for relief, and nearly two years before the ALJ issued his decision in this matter. *See* T. 357, 363. The ALJ, as an example, concluded that Dr. Bennett's medical source statement was given "little weight" that plaintiff ". . . could not perform work activity even at a sedentary level since [this conclusion] is not supported by Dr. Schwab's assessment of . . . claimant's restrictions." T. 20.

Under these circumstances, it was erroneous for the ALJ to rely on Dr. Schwab's single examination in declining to afford Dr. Bennett's opinion, based on extensive period of time, controlling weight.

Second, the ALJ improperly interpreted the medical record and mischaracterized Plaintiff's treatment as conservative in order to support his decision. The ALJ's finding that Plaintiff's progressing course of treatment, which included pain medication (*e.g.* Tramadol) (T. 297, 313, 316) and epidural injections (T. 357, 366), was "conservative" is clearly unsupported by the record. *See Hamm v. Colvin*, 16cv936(DF), 2017 WL 1322203, at \*24 (S.D.N.Y. Mar. 29, 2017) (finding the plaintiff's prescriptions for a number of medications and injections and ablation were not properly characterized as "conservative" treatment); *Knepple-Hodyno v. Astrue*, No. 11-cv-443(DLI), 2012 WL 3930442 at \*11, (E.D.N.Y. Sept. 10, 2012) (evidence showing the plaintiff was receiving epidural injections to her spine called into question whether her treatment was "conservative").

Although the ALJ claimed Dr. Bennett noted only "mild" limitation in Plaintiff's range of motion, the Court's review of the complete record clearly reveals that Dr. Bennett found Plaintiff to have a diminished range of motion in her spine and that Plaintiff had pain caused by lumbosacral radiculopathy. He began administering epidural injections in April 2014 because

physical therapy was ineffective in relieving Plaintiff's disabling pain. T. 359-68. Conclusions by an ALJ that rely on a mischaracterization of the record, as in this case, cannot be considered "good reasons" for rejecting a treating physician's opinion. *Wilson v. Colvin*, 213 F. Supp. 3d 478, 485 (W.D.N.Y. 2016); *see also Brennan v. Colvin*, No. 13-V-6338 AJN RLE, 2015 WL 1402204, at *16 (S.D.N.Y. Mar. 25, 2015).

For all the foregoing reasons, the Court finds that the ALJ failed to articulate good reasons for the weight he afforded Dr. Bennett's opinion, in violation of the treating physician rule. The Court further finds that under the Commissioner's regulations in place at the time the ALJ issued his decision, Dr. Bennett's opinion was entitled to controlling weight, because it was well-supported by the medical evidence of record.

**III. Remedy**

Under 42 U.S.C. § 405(g), the district court has the power to affirm, modify, or reverse the ALJ's decision with or without remanding for a rehearing. Remand solely for calculation and payment of benefits is appropriate where the record persuasively demonstrates the claimant's disability, *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980), and there is no reason to conclude that additional evidence exists that might support the Commissioner's claim that the claimant is not disabled, *Butts v. Barnhart*, 388 F.3d 377, 385-86 (2d Cir. 2004).

13

For the reasons set forth above, the Court finds that the ALJ's decision to give less than controlling weight to the opinion of Plaintiff's treating neurosurgeon, Dr. Bennett was legally erroneous and unsupported by substantial evidence. Furthermore, based on the VE's hearing testimony, had Dr. Bennett's opinion properly been afforded controlling weight, a disability finding would have necessarily followed. *See* T. 54.

The VE's testimony clearly reveals the ALJ gave summaries of two medical findings: the first, consistent with the ALJ's ultimate RFC finding, and an alternate hypothetical containing occasional limitations in the ability to perform certain activities within a schedule, and occasional limitations in the ability to complete a normal work week due to pain symptoms. T. 53. The VE's opinion relying upon the first hypothetical, with no consideration of the limitations associated with Plaintiff's pain, supported Plaintiff's ability to do some types of work within the national economy. However, the hypothetical taking Plaintiff's symptoms of pain into account resulted in the finding that a plaintiff with those incapacities would not be able to perform any job and thus, be disabled. *Id*. Moreover, a hypothetical presented by Plaintiff's attorney which relied on Dr. Bennett's conclusions also resulted in the finding that a plaintiff with those limitation would be unable to perform any job in the national economy and thus, would be disabled. T. 54.

Finally, the record in this case is complete, and further development cannot reasonably be expected to support a finding that Plaintiff is not disabled. Accordingly, the Court finds that remand solely for the calculation and payment of benefits is warranted.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision was legally erroneous and is not supported by substantial evidence. It therefore is reversed. Accordingly, Defendant's motion for judgment on the pleadings (Docket No. 17) is denied, and Plaintiff's motion for judgment on the pleadings (Docket No. 10) is granted, and the case is remanded solely for the calculation and payment of benefits. The Clerk of Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                          S/Michael A. Telesca
                                        _____
                                        HONORABLE MICHAEL A. TELESCA
                                        United States District Judge

Dated:    October 24, 2018
             Rochester, New York